```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
HENRY KATZ,

                        Plaintiff,                    REPORT & RECOMMENDATION
                                                         19 CV 3615 (RRM)(LB)
        -against-

WANDERSTAY HOTELS, LLC,


                        Defendant.
-------------------------------------------------------------X
```
**BLOOM, United States Magistrate Judge:**

Plaintiff, Henry Katz, brings this civil action against Wanderstay Hotels, LLC ("Wanderstay") alleging that it violated his rights under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181, *et seq.*; the ADA Accessibility Guidelines ("ADAAG"), 28 C.F.R. Part 36; the New York State Human Rights Law ("NYSHRL"), N.Y. EXEC. LAW § 296(2); and the New York City Human Rights Law ("NYCHRL"), N.Y. CITY ADMIN. CODE §§ 8-107(4), 8-107(15). Despite proper service of the summons and complaint, defendant has failed to plead or otherwise defend this action. Plaintiff now moves for a default judgment against defendant pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. ECF No. 15. The Honorable Roslynn R. Mauskopf referred plaintiff's motion for a default judgment to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the reasons set forth below, it is respectfully recommended that plaintiff's motion for default judgment should be denied.

1

## FACTUAL BACKGROUND[1]

Plaintiff Henry Katz, a resident of Nassau County, New York, suffers from abnormal nerve fiber density that limits his ability to walk and causes him serious pain; this condition is a "qualified disability" under Title III of the ADA. ECF No. 1, Complaint, ("Compl.") at ¶ 8. Plaintiff has family ties in Houston, Texas and desires to travel there. Id. at ¶ 21.

The defendant, Wanderstay, is a Texas limited liability company that owns and/or operates the hotel "The Wanderstay Houston" and controls its website (located at www.wanderstayhotels.com/), where prospective guests are able to reserve rooms. Id. at ¶¶ 1, 10.[2]

Prior to filing his complaint, plaintiff visited the Hotel's website ("the Website") with the intent to learn about the Hotel's accessibility and to ascertain whether or not he could book a room that would meet his needs. Id. at ¶¶ 26–28. He discovered that the Website did not identify and describe accessibility features, as required by the ADA.[3] Id. at 29. The Website homepage says nothing about accessibility of the Hotel or its amenities; the page titled "rooms" lists guestroom types but does not include any accessible options; and the "book now" function does not include an option to find accessible rooms. Id. at ¶ 36. The Website also fails to include accessibility information concerning the parking accommodations or the common areas. Id. at ¶ 37. Finally, the

---

[1] The facts are drawn from the uncontested allegations in plaintiff's complaint and are taken as true for the purpose of deciding this motion. See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F. 3d 105, 108 (2d Cir. 1997) (deeming well-pleaded allegations in complaint admitted on motion for a default judgment).

[2] According to its website, Wanderstay is a hostel, offering co-ed dorm-style rooms and some private rooms. "It is generally proper to take judicial notice of articles and [websites] published on the [i]nternet." Magnoni v. Smith & Laquercia, LLP, 701 F. Supp. 2d 497, 501 (S.D.N.Y. 2010) (citation and quotation marks omitted).

[3] 28 C.F.R § 36.302(e)(1)(i) requires that an inn, hotel, motel, or other place of lodging, "[m]odify its policies, practices, or procedures to ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms."

Website fails to state whether the Hotel complies with the ADA Standards for Accessible Design. Id. Katz states his intention to visit the Website at some point in the future, to determine whether he can book an accessible room online. Id. at ¶ 40.

## PROCEDURAL HISTORY

Plaintiff commenced this action by filing his complaint against defendant on June 20, 2019. ECF No. 1. The summons and complaint were personally served on James "Doe," an individual designated by law to accept service on behalf of defendant, on July 23, 2019. ECF No. 6. Out of concern that defendant was not properly served with process, the Court ordered plaintiff to take appropriate action to re-serve defendant. ECF No. 6. Plaintiff addressed the Court's concerns by showing that defendant was served with the summons and complaint at the address of defendant's registered agent provided by the Texas Secretary of State and that the parties subsequently engaged in settlement discussions. ECF No. 7. Since defendant had actual notice of the summons and complaint, the Court excused plaintiff from re-serving defendant and ordered defendant to respond to plaintiff's complaint by October 18, 2019.

When defendant failed to answer or otherwise appear in the action, plaintiff requested, and the Clerk of Court noted defendant's default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. ECF Nos. 10–11. Plaintiff served the entry of default and additional copies of the summons and complaint upon defendant at three different addresses in Texas. ECF No. 13. Plaintiff now moves for a default judgment against defendant pursuant to Rule 55(b)(2). ECF No. 15, Motion for Default Judgment by Henry Katz. ("Mot."). The motion was referred to me for a Report and Recommendation.

## DISCUSSION

### I.   Legal Standard

Rule 55 of the Federal Rules of Civil Procedure establishes the two-step process for a plaintiff to obtain a default judgment. First, "[w]hen a party against whom judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after a default has been entered against a defendant, and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on a plaintiff's motion, enter a default judgment. Fed. R. Civ. P. 55(b)(2).

In light of the Second Circuit's "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95–96 (2d Cir. 1993). "Accordingly, [a] plaintiff is not entitled to a default judgment as a matter of right simply because a party is in default." Finkel v. Universal Elec. Corp., 970 F. Supp. 2d 108, 118 (E.D.N.Y. 2013) (citing Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (courts must "supervise default judgments with extreme care to avoid miscarriages of justice")).

On a motion for a default judgment, the Court "deems all the well-pleaded allegations in the pleadings to be admitted." Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 108 (2d Cir. 1997). However, regardless of the assumption of truth, the Court has a "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." Rolls-Royce PLC v. Rolls-Royce USA, Inc., 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)). In other words, "[a]fter default . . . it remains for the Court to consider whether the unchallenged facts

4

constitute a legitimate cause of action, since a party in default does not admit conclusions of law." Id. (internal quotation marks and citation omitted).

## II. Personal Jurisdiction

### A. Standard

"Because the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived." Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 703 (1982). Therefore, "a district court should *not* raise personal jurisdiction *sua sponte* when a defendant has appeared and consented, voluntarily or not, to the jurisdiction of the court." Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp., 619 F.3d 207, 213 (2d Cir. 2010) (emphasis in original). However, when a defendant declines to appear and a plaintiff seeks a motion for a default judgment, the Second Circuit has held that before a court grants a motion for a default judgment, it should assure itself that it has personal jurisdiction over the defendant. Id. A default judgment is void if the court that rendered it lacked personal jurisdiction over the defendant. City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 138 (2d Cir. 2011).

To hold that the Court has personal jurisdiction over a non-domiciliary in a case involving a federal question, such as in the present case, the Court conducts a two-part inquiry: first, the Court must determine whether jurisdiction exists under the laws of the forum state; then the Court must determine whether personal jurisdiction comports with the Due Process Clause of the United States Constitution. Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 163-164 (2d Cir. 2010).

New York's long-arm statute provides, in relevant part, that a court may exercise personal jurisdiction "over any non-domiciliary ... who in person or through an agent ... transacts any business within the state," so long as the cause of action "aris[es] from" that transaction. N.Y.

5

C.P.L.R. § 302(a)(1), hereinafter "§ 302(a)(1)." Accordingly, the Court may exercise personal jurisdiction over a non-domiciliary if two conditions are met: "first, the non-domiciliary must transact business within the state; second, the claims against the non-domiciliary must arise out of that business activity." Aquiline Capital Partners LLC v. FinArch LLC, 861 F. Supp. 2d 378, 386 (S.D.N.Y. 2012) (internal citations and quotations omitted).

With regard to the first prong, "the overriding criterion necessary to establish a transaction of business is some act by which the defendant purposefully avails itself of the privilege of conducting activities within New York […] thereby invoking the benefits and protections of its laws." Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 673 F.3d 50, 61 (2d Cir. 2012) (internal quotation marks omitted). Section 302(a)(1) is a "single-act statute requiring but one transaction — albeit a purposeful transaction — to confer jurisdiction in New York." Grand River Enters. Six Nations, Ltd. v. Pryor, 425 F.3d 158, 166 (2d Cir. 2005) (internal quotation marks omitted) (quoting Parke-Bernet Galleries, Inc. v. Franklyn, 26 N.Y.2d 13, 17 (1970)). In fact, a "single act of shipping a [good] might well be sufficient, by itself to subject [a nondomiciliary] to the jurisdiction of a New York court under section 302(a)(1)." Chloe, 616 F.3d at 170.

### B. Discussion

Plaintiff has failed to plead sufficient facts to establish a basis for personal jurisdiction over defendant under § 302(a)(1). Plaintiff's claims arise out of his contact with defendant Hotel's website. As to the first prong, "transact[ing] business within the state," the Second Circuit has directed district courts to look to the degree of interactivity and the commercial nature of the exchange of information that occurs on the site when considering whether to exercise personal jurisdiction over a defendant because of its website. See Best Van Lines, Inc. v. Walker, 490 F.3d 239, 252 (2d Cir. 2007) ("We think that a website's interactivity may be useful for analyzing

6

personal jurisdiction under section 302(a)(1), but only insofar as it helps to decide whether the defendant 'transacts any business' in New York.")

"Courts apply a 'sliding scale' test based on the level of a website's interactivity." Audiovox Corp. v. S. China Enter., Inc., No. 11-CV-5142, 2012 WL 3061518, at *3 (E.D.N.Y. July 26, 2012) (citing Best Van Lines, 490 F.3d at 251 ("'[T]he likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet.'" (quoting Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997))))). "A website that merely passively provides information that is accessed by individuals in New York is not grounds for the exercise of personal jurisdiction." Audiovox, 2012 WL 3061518, at *3 (collecting cases).

Plaintiff's complaint makes the conclusory statement that defendant "conducts and/or seeks to conduct business in the State of New York through its interactive website, as set forth more fully herein." Compl. at ¶ 10. Plaintiff describes an online reservation system where potential guests can reserve rooms, but he provides no evidence to support a finding that the defendant Hotel conducts business in New York. Plaintiff's complaint therefore fails to establish a basis for personal jurisdiction over defendant. The maintenance of a website accessible to New York residents is not sufficient on its own to establish personal jurisdiction over a defendant. See Citigroup Inc. v. City Holding Co., 97 F. Supp. 2d 549, 565 (S.D.N.Y. 2000).

Even if plaintiff had made a showing of sufficient interactivity directed towards New York residents, his complaint fails to meet the second prong of § 302(a)(1). Plaintiff fails to allege that defendant engaged in a "transaction" with him in the way that the term is typically understood, but rather, plaintiff states that he visited Wanderstay's website and witnessed the ADA violation. Courts in this Circuit have held that a New York resident viewing the website of an out-of-state

defendant, absent more, is not enough to establish personal jurisdiction over the defendant. See Mercer v. Rampart Hotel Ventures, LLC, No. 19-CV-3551, 2020 WL 236843, at *5 (S.D.N.Y. Jan. 16, 2020) (holding that the Court did not have personal jurisdiction over a Louisiana hotel that plaintiff alleged maintained a reservation website that was not compliant with the ADA) (Report and Recommendation) adopted by 2020 WL 88207 (S.D.N.Y. Feb. 24, 2020); Alibaba Grp. Holding Ltd. v. Alibabacoin Found, No. 18-CV-2897, 2018 WL 2022626, at *4 (S.D.N.Y. Apr. 30, 2018) ("[T]he existence of an interactive patently commercial website that can be accessed by New York residents is not sufficient to justify the exercise of personal jurisdiction unless some degree of commercial activity occurred in New York.").

This analysis does not turn on whether a New York resident *could* purchase goods or make a reservation on the Website; Section 302(a)(1) requires that non-domiciliary transact business within the state *and* that plaintiff's cause of action arise out of that business activity. Here, plaintiff does not show that defendant has transacted any business with New York; nor does he plead that his cause of action arises out of a business activity with defendant. As the New York's long-arm statute does not reach the out-of-state defendant, the Court need not reach the second step of the Due Process analysis. Plaintiff's motion for a default should be denied for lack of personal jurisdiction over defendant.

## CONCLUSION

Accordingly, for the reasons set forth above, I respectfully recommend that the Court should deny plaintiff's motion for a default judgment. Plaintiff is hereby directed to serve a copy of this Report and Recommendation upon the defendant and file proof of service with the Clerk of the Court forthwith.

**FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections. See Fed. R. Civ. P. 6. Such objections shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

/S/
LOIS BLOOM
United States Magistrate Judge

Dated: March 4, 2021
       Brooklyn, New York